### BOURG *vs.* TRAHAN'S HEIRS.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF WEST BATON ROUGE.

The estimated value of slaves settled as dowry, does not transfer the property in them to the husband, unless there be an express declaration to that effect in the marriage contract.

So, the future husband, does not come under any express obligation to pay the *price* of slaves, estimated in fixing the amount of dowry, any more

than he does of *lands* that are dotal, which cannot, even by express agreement, become his property.

There must be a definite *price* fixed, for slaves which are constituted *dot*, and which the husband is bound to pay, or there is no sale and transfer of the property in the slaves, to him.

This is an action of partition, in which the plaintiff claims to be the owner of certain property constituted in dowry, by his late wife, Ursule Trahan, in the marriage contract entered into between them, and which is in the possession of the defendants, her heirs.

The plaintiff shows, that he intermarried with the ancestress of the defendants, then Veuve Brian, the 15th January, 1834, and that she brought into marriage, a plantation, estimated in the marriage contract at two thousand dollars ; a tract of land estimated at five hundred dollars ; seven negroes estimated at various prices, specified, amounting to four thousand dollars, and movable property, appraised at one thousand dollars, the whole amounting to seven thousand dollars.

He further shows, that by the terms of said marriage contract, he became the absolute owner in his own right, of all the property thus mentioned and specified, and remained debtor only for the price of estimation, but of which sum he was to pay the children of his said wife by a former marriage, three thousand one hundred and sixty-eight dollars, leaving the sum of three thousand eight hundred and thirty-one dollars, constituted as dowry, in favor of his wife, and for which he was accountable ; that in the same year she died without issue of this, but leaving six children or heirs by her first marriage, who by their representatives or tutors took possession of the entire property of her succession, and caused it to be sold about the 15th February, 1835, including the land and slaves constituted in dowry; that being the absolute owner of all this property, the sale must be considered as made for his benefit, amounting to nine thousand six hundred and seventy dollars, and that the heirs being entitled to seven thousand dollars, the estimated price

of the dowry, he is consequently entitled to receive the surplus in his own right, amounting to two thousand six hundred and seventy dollars, for which, and some small sums for debts and commissions paid by him, and made in settling the estate, amounting in the aggregate to three thousand two hundred and seventy-eight dollars. He prays a partition and judgment.

The defendants pleaded to the jurisdiction of the Probate Court, averring that the ordinary tribunals had exclusive cognizance of the case.

For further answer, they averred, that the property claimed as belonging to the plaintiff, was always the separate and exclusive property of their deceased mother, and made no part of the community of acquests and gains. They pray that the plaintiff's demand be rejected.

Upon these pleadings and issues, the cause was tried. The plaintiff produced the marriage contract in evidence, upon which he relied to support his claim to the property in question.

The probate judge dismissed the suit, and the plaintiff appealed.

*Labauve* and *Stacy*, for the appellant.

The marriage contract transferred the slaves and movables to the husband; by the sole fact of the celebration of the marriage he became charged (*chargée*) with the net estimated value of the property, after deducting the debts. This amount is all that can be claimed by the wife. *Civil Code,* 2335, 2351.

2. If all the slaves had perished, under the article 2348, of the Civil Code, the husband would, nevertheless, have been obliged to pay to the heirs of his wife their estimated value per the marriage contract.

3. If such be the fact, the slaves must belong to the husband, *resperit domino.* The judgment should be reversed, and the cause remanded for a new trial, and to admit testimony of the proceeds of the sale of the slaves, contained in the marriage contract.

EASTERN DIST.

*May*, 1838.

BOURG
*vs.*
TRAHAN'S HEIRS.

*Burke* and *Hiriart*, for the defendants, made the following points in writing :

1. The estimated value of shares settled as dowry, does not transfer the property of the same to the husband, unless there be an express declaration to that effect. *Louisiana Code, article* 2335.

2. On examining the marriage contract, the *express declaration* to effect a *sale*, is in vain sought in the clause quoted ; nothing less would transfer the wife's slaves ; the law is very provident, and speaks in guarded terms. It knows the wife, not to be versed in business affairs, and presumes that she does not transact it ; but if she does, it will leave nothing to inference ; knowing her ignorance it will not allow her to become the victim of incautious or equivocal stipulations, and protects her at once from the consequences of her own heedlessness, the designs of her husband, and the carelessness of notaries ; all its presumptions are in her favor, that she did not contract ; but if she did, all its interpretations of her contract are in her favor : *"pro dotibus in ambeguis respondendum est."*

3. The intentions of the wily and experienced in business are collected from the terms of their stipulations, by rules of general interpretation, and they are understood to mean what they say, but the law will take nothing less than the *express declaration* of the wife as to her *intentions* thus constituting her, her own interpreter, and she is not understood to mean what she does not say, " *tacens non utique fatetur.*" The express declaration of the intention of the wife is not an intention to sell, but to get married ; not to make an act of sale but a marriage contract ; not to recognize herself as a seller, but as a wife ; not the other party as a buyer, but as a husband ; not the property as that transferred, but as remaining in her, " *les biens de la future épouse.*" Not for the price of three thousand eight hundred and thirty-one dollars and seventy-three cents, but as of that value by estimation, not to be paid unconditionally at a certain time, or at a time to be rendered certain, but to remain charged with the indefi-

nite responsibility of every one who administers the property of others; no delivery, no acceptance, no payment, no time fixed for payment, no interest stipulated, no privilege, mortgage, or other security retained.

4. It cannot be, that this immense hiatus, the total absence of all these ordinary and necessary terms and stipulations, incident to a sale, have been supplied by the compendious clause of *estimation* at the charge of the husband.

5. Estimation is not price; it is the value, not the consideration; it is the common consent that the object is worth so much, not the consent of either the one to take or of the other to give so much for it; estimation ascertains the intrinsic worth, price fixes the conventional consideration; the one is conservatory, the other is obligatory; the one secures, the other pays; the one provides against the loss or destruction of the object, by making provision for the restitution of its value, the other loses or destroys it and replaces it by a specific sum; however similar, they are not the same, " *simile non est idem;*" how nearly they approximate, there is no contact, parrallel lines never meet, the circle itself must be formed by the inflection of the opposite points of the lines, estimation is not price, " *venditio imaginaria pretio non accidente.*"

6. The clause charging the husband is mere verbiage of a notary; the husband is equally charged without any such stipulation, its presence or absence makes no difference, changes nothing, affects nothing of the respective rights and obligations of the parties.

7. The suggestion in the adverse brief of remanding the cause, to inquire of other matters, is strange; the record contains the formal consent of counsel, to restrict the inquiry to the question of property. It would be useless to send it back for any purpose, least of all to take the testimony of the notary and witnesses formally, it is now credibly here in the judgment touching the intentions of the parties to the act.

*Carleton, J.*, delivered the opinion of the court.

The plaintiff claims the property brought by his wife, Ursule Trahan, into marriage, alleging that it was transfer-

red to him by the terms of the marriage contract which he annexes to his petition.

The defendants except to the jurisdiction of the court; deny generally, and aver, that the property brought into marriage was the dowry of plaintiff's wife, and was never transferred to him.

The cause was submitted to the probate judge, who overruled the plea to the jurisdiction of the court, and rendered a judgment, on the merits of the cause, in favor of the defendants.

By consent of the counsel on both sides, the question in controversy was narrowed to a single point, viz. whether the slaves estimated in the marriage contract were transferred to, and became the property of the husband.

By that contract, the whole of the wife's property, among which are the slaves in question, is estimated at seven thousand dollars, from which are deducted certain debts due by her to her children by a former marriage, leaving a net balance of three thousand eight hundred and thirty-seven dollars and seventy-three cents: then follows the clause upon which the plaintiff relies as evidence of a transfer of the property in the following words: "La quelle somme de trois mille huit cent trente une piastres et soixante-treize sous le dit future epoux, consent et demeure chargé par le seul fait de son mariage, c'est ainsi, que le toute a été arrêté et conclu entre les parties."

The article 2335 of the Lousiana Code declares, that "the estimated value of slaves, settled as dowry, does not transfer the property of the same to the husband, unless there be an express declaration to that effect."

The passage cited from the marriage contract contains no such express declaration.

The future husband does not come under any express obligation to pay the price of the slaves, any more than he does of the land, which being dotal, could not even by express agreement become his property. *Louisiana Code*, 2335, latter clause. It is true, the slaves are separately valued, but in making up the *apport affectif*, that appraised value is

The estimated value of slaves settled as dowry, does not transfer the property in them to the husband, unless there be an express declaration to that effect in the marriage contract.

So, the future husband does not come under any express obligation to pay the *price* of slaves, estimated in fixing the amount of dowry, any more than he does of *lands* that are dotal, which cannot, even by express agreement, become his property.

There must be a definite *price* fixed for slaves which are constituted *dot*, and which the husband is bound to pay, or there is no sale and transfer of the property in the slaves to him.

EASTERN DIST.
*May,* 1838.

WALLACE ET AL.
*vs.*
BEAUCHAMP
ET AL.
added to the value of the land and movables, and the amounts due to the children by former marriages, are deducted. There is not, therefore, a definite price of the slaves fixed by the contract, and which the future husband was bound to pay; without such price there can be no sale.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.